IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01434-CMA-MEH

JOHN RAINEY,

    Plaintiff,

v.

HECTOR T. HUERTAS,
TRAVIS TRANI,
DENNIS BURBANK, and
DR. HODGE,

    Defendants.

_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court are Plaintiff's Motion for Investigation for Being Denied Access to the Court and Preliminary Injunction and Temporary Restraining Order [filed September 10, 2012; docket #55] and Plaintiff's Reply Motion for Investigation for Being Denied Access to the Court and Preliminary Injunction and Temporary Restraining Order [filed September 19, 2012; docket #61]. The Motions have been referred to this Court for recommendation. (Dockets #57 and #63.) The motions have been briefed to the extent allowed by law, and the Court finds that oral argument will not assist in the adjudication of the motions. For the reasons that follow, the Court RECOMMENDS Plaintiff's Motions be **DENIED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to

**I.      Background**

Plaintiff brings this lawsuit under 42 U.S.C. §1983 as a *pro se* litigant incarcerated in Colorado State Penitentiary. Plaintiff filed his initial complaint on June 1, 2012, and an Amended Complaint as a matter of right on August 3, 2012. (Dockets ##1, 37.) Plaintiff alleges essentially that Defendants deprived him of his First (access to the courts and freedom of religion), Eighth (deliberate indifference to medical needs), and Fourteenth (due process) Amendment rights by refusing to correct discrepancies in meals that are served in contravention of medical orders to provide a "mechanical soft diet," and orders to provide a "religious diet." (Docket #37 at 4-11.) As a result of Defendants' alleged refusal to correct deficiencies, Plaintiff asserts that he has lost 18 pounds in less than 90 days. (*Id.* at 4.) Further, Plaintiff contends that certain Defendants have improperly characterized his grievances as "frivolous." (*Id.* at 5.) Finally, Plaintiff alleges the Defendants have improperly removed legal documents from his cell and from his mailings to the Court. (*Id.* at 7-9.) As relief, Plaintiff requests actual and punitive damages against each Defendant in various amounts. (*Id*. at 20.) The Plaintiff makes no request for injunctive relief in the Amended Complaint.

Plaintiff filed the present motions on September 10, 2012 and September 19, 2012. Although the motions are vague, prolix and somewhat difficult to comprehend, the Court has construed these motions as seeking different forms of preliminary injunctive relief: an investigation into charges that

---

proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

facility staff have tampered with his legal mail (Sept 10) and a transfer to another facility (Sept 19). Specifically, Plaintiff filed the motion for investigation upon suspicion that the Department of Corrections ("DOC") has opened Plaintiff's outgoing mail and removed or altered certain documents intended for the Court. (Docket #55, 1.) In light of these allegations, Plaintiff claims his constitutional right to access the Court has been violated. (*Id.* at 3.) As relief, Plaintiff seeks reimbursement of his photocopying charges, an investigation into his charges, and an order allowing him to inspect the documents he filed with, and are in possession of, the Court. (*Id.* at 4-5.)

Plaintiff filed the motion for transfer arguing that his Amended Complaint was tampered with and altered, and that he was denied a transfer to the Sterling facility at the last minute "so that he can continue to be starved and denied medical treatment." (Docket #61 at 3.) Plaintiff seeks an order moving him to "Sterling Ad-Seg." (*Id.* at 4.)

Defendants respond to the motions arguing that Plaintiff's requests for injunctive relief are not related to his claims against them in this case and, alternatively, that Plaintiff cannot meet the requirements necessary to justify preliminary injunctive relief, including a showing of imminent harm and a likelihood of success on the merits, in this case.

**II.    Discussion**

Although vague, prolix and difficult to decipher, the Court construes Plaintiff's first-filed motion for injunctive relief as a request for an order requiring the CDOC to conduct an investigation into his charges that Defendants are improperly confiscating his legal materials from his cell or from the envelopes he prepares for mailing.[2] The Court construes the second-filed motion (also vague

---

[2] The Plaintiff also seeks monetary relief in the form of reimbursement of his copy costs, but such request is improper in a motion for preliminary injunctive relief.

and somewhat difficult to decipher) as a request for an order requiring the CDOC to transfer him to the Sterling facility. Because the issue has not been raised by the parties, the Court will assume without deciding that Plaintiff's requests are forms of injunctive relief properly requested pursuant to Fed. R. Civ. P. 65(a). The question, then, is whether Plaintiff is entitled to such relief. Defendants contend that Plaintiff is entitled to neither an investigation nor to a transfer because they are not related to the claims in his Amended Complaint and because Plaintiff cannot meet the requirements necessary to grant injunctive relief in this matter. The Court will address each contention in turn.

### A.     Relief Unrelated to Claims

Because a preliminary injunction is intended to preserve the status quo until the Court has an opportunity to reach the merits, a party moving for a preliminary injunction "must establish 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). While the injuries alleged in the motions (confiscation of legal materials and deprivation of food) relate to factual allegations made in the Amended Complaint, and while the Plaintiff attributes his alleged deprivation of food to the named Defendants in the Amended Complaint, he does not attribute the alleged confiscation of legal materials to any Defendant in the case.

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Plaintiff must show that each Defendant caused the deprivation of a federal right. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Here, the Plaintiff fails to show how any of the Defendants allegedly confiscated

his legal materials.

Plaintiff's failure to identify Defendants is also problematic because of the Court's general inability to enjoin non-parties. *See* Fed. R. Civ. P. 65(d). According to Rule 65(d), an injunction binds only the parties, their "officers, agents, servants, employees, and attorneys," and other persons who are in active concert therewith. Because Plaintiff has failed to show that any of the named Defendants participated in the alleged mail tampering, the Court is not persuaded that it could stop the activity simply by enjoining Defendants. Therefore, the Court recommends that the District Court deny Plaintiff's requests for preliminary injunctive relief in the form of an investigation and a transfer to another facility based upon any alleged confiscation and tampering of his legal materials.

B.     Requirements of Rule 65

A preliminary injunction is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting a preliminary injunction must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.* The burden is on the movant to establish his right to the relief requested. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Moreover, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, the Tenth Circuit has identified the following three types of specifically disfavored preliminary injunctions ... (1)

preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier,* 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Here, Plaintiff appears to seek a preliminary injunction that would require Defendants to act in a way that (Plaintiff alleges) is contrary to their prior practices, *i.e.*, to conduct an investigation into charges of improper food handling and to transfer him to another facility. Given the relief Plaintiff appears to seek, the relief sought would alter the status quo rather than preserve it and would also require Defendants to engage in affirmative actions. For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier,* 427 F.3d at 1259, 1261.

        1.     Irreparable Injury

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).

Here, the Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied. *Id.* at 1258. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm

is more than "merely serious or substantial" harm. *Id.* (citation omitted). The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm." *Id.* (emphasis in original) (citation omitted).

Here, the Plaintiff contends that he has lost 23 pounds as a result of Defendants' alleged refusal to abide by his medically prescribed "mechanical soft" diet. However, the Plaintiff does not argue that he suffers any adverse health effects as a result of the lost weight; as such, the Court cannot find that Plaintiff's claimed injury is more than "merely serious or substantial," or is of such *imminence* that there is a clear and present need" for a preliminary injunction here. Therefore, the Court concludes the Plaintiff fails to demonstrate the likelihood of an irreparable injury as required to impose disfavored injunctive relief in this matter.

However, in his Amended Complaint, the Plaintiff alleges (among other claims) "deliberate indifference to his medical needs," which the Court construes as a claim for violation of his Eighth Amendment right to be free from cruel and unusual punishment. I am aware that a presumption of irreparable injury exists where constitutional rights are infringed. *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (holding that a presumption of irreparable injury exists where plaintiff claimed that monetary relief would not properly redress the violation of his right to free exercise of religion caused by previous denials of pastoral visits). Thus, to be entitled to a presumption of irreparable injury, the Plaintiff must establish a substantial likelihood of success on his constitutional claim.

    2.    Substantial Likelihood of Success on the Merits

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions

of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).  Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)).  The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293).  The subjective component

8

requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

First, while Plaintiff's "mechanical soft" diet is one that has been medically prescribed, he has not established that his claimed injury – weight loss – is "sufficiently serious" or "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." The Court concludes that weight loss, on its own, does not rise to the level of a substantially serious medical need protected by the Eighth Amendment. Thus, the Plaintiff has failed to show he is substantially likely to succeed in demonstrating the objective component of an Eighth Amendment claim.

Moreover, the Plaintiff has not shown he is likely to succeed in demonstrating the subjective component that Defendants consciously disregarded a substantial risk of harm. The evidence provided thus far demonstrates that the Defendants have attempted to comply with the prescription diet and with Plaintiff's requests concerning his diet. For example, on March 5, 2012, Capt.

Richard, CSP Food Service Supervisor, issued a "kite response" to the Plaintiff in which he states that a "one tray meal" had been implemented for lunches and that such implementation was approved by the dietician and "HQ food service." *See* docket #21 at 6.[3] Capt. Richard explains that, despite any administrative changes, the Plaintiff was still served the food approved for his special diet. *Id.* Further, on May 23, 2012, Capt. Huertas, CSP Custody Control Supervisor, wrote a memorandum to the Plaintiff warning him that "holding" his meal trays was a disruption to Pod operations and would not be tolerated. Docket #8 at 7. Capt. Huertas refers to Plaintiff's complaint that the bread was torn into pieces and reminds the Plaintiff that his special diet calls for food to be cut up; Huertas then instructs Plaintiff that if he wants to change his diet, he needs to speak with the dietician. *Id.* On June 12, 2012, Capt. Richard issued another memorandum to the Plaintiff in which he explains that he asked the dieticians to review the Plaintiff's diet for accuracy and to discuss the Plaintiff's issues with them. Docket #13 at 6. According to Capt. Richard, the dieticians suggested a puree diet, but the Plaintiff refused. *Id.* Capt. Richard also expresses that the Plaintiff complains whether food service chops up his food or does not chop up his food; thus, he explains to the Plaintiff they food service will simply follow the dietician's instructions. *Id.*

The Plaintiff does not rebut this evidence; rather, he appears to complain that his bread his chopped up so that he cannot make sandwiches and that he is being served canned fruit rather than fresh fruit he can eat, like bananas or oranges. However, such disagreement with "treatment" (his

---

[3]As explained earlier, the Plaintiff's filings are vague, prolix and somewhat difficult to decipher. At the same time, the Plaintiff has filed numerous documents with the Court, some of which were attached to "improper" filings. However, mindful of the Court's obligation to construe Plaintiff's filings liberally, the Court has reviewed the entire docket and has considered for purposes of this motion all official (CDOC) documents provided by both the Plaintiff and Defendants in this matter.

diet) does not amount to deliberate indifference. *See Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999). Plaintiff also claims that certain food items required by his diet tickets are not included on his tray, but he also admits that he gets a special snack to help him gain weight.

Therefore, the Court concludes that the Plaintiff has failed to establish a substantial likelihood he will succeed in demonstrating the Defendants consciously disregarded a serious medical condition that resulted in substantial harm. *See Kikumura*, 242 F.3d at 955 (movant seeking a preliminary injunction that would disturb the status quo must demonstrate not only a substantial likelihood of success on the merits, but also that the factor weighs heavily and compelling in his favor). Consequently, the Court finds that Plaintiff has failed to demonstrate a presumption of irreparable harm necessary to impose a preliminary injunction that would alter the status quo in this case.

### 3. Balance of Hardships

Defendants contend that a preliminary injunction in this case would likely undermine their supervisory authority over prison inmates and negate CDOC policy. The Plaintiff argues that he may continue to lose weight if an injunction is not imposed. The Court finds that, considering the lack of irreparable injury in this case, the burden on Defendants (and to the public, in general) outweighs any harm the Plaintiff may suffer from denial of his requests for an investigation of food issues and a transfer at this early stage of the litigation.

### 4. Public Interests

Since the Court has already determined that Plaintiff is unlikely to demonstrate Defendants violated his Eighth Amendment rights, the Court finds that granting Plaintiff's motion would be adverse to the public interest.

11

### III.     Conclusion

In sum, the Court finds that, with respect to Plaintiff's allegations of mail tampering and confiscation of legal materials, the Plaintiff has failed to establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. Further, the Plaintiff has not met his burden to show that a preliminary injunction regarding his allegations of improper food handling, particularly one that is disfavored, is necessary in this case. Therefore, this Court recommends that the District Court find the Plaintiff has failed to demonstrate he is entitled to a temporary restraining order or preliminary injunction in this matter.

Based upon the foregoing, this Court respectfully RECOMMENDS that the Plaintiff's Motion for Investigation for Being Denied Access to the Court and Preliminary Injunction and Temporary Restraining Order [filed September 10, 2012; docket #55] and Plaintiff's Reply Motion for Investigation for Being Denied Access to the Court and Preliminary Injunction and Temporary Restraining Order [filed September 19, 2012; docket #61] be **DENIED**

Entered and dated at Denver, Colorado, this 30th day of November, 2012.

> BY THE COURT:
>
> *Michael E. Hegarty*
>
> Michael E. Hegarty
> United States Magistrate Judge