IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01434-CMA-MEH

JOHN RAINEY,

       Plaintiff,

v.

HECTOR T. HUERTAS,
TRAVIS TRANI,
DENNIS BURBANK, and
DR. HODGE,

       Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

       Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint [filed October 22, 2012; docket #95]. The motion has been referred to this Court for recommendation. (Docket #98.) The motion has been briefed to the extent allowed by law, and the Court finds that oral argument will not assist in the adjudication of the motion. Based on the record herein and for the reasons that follow, the Court RECOMMENDS that Defendants' motion be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140,

## BACKGROUND

Plaintiff initiated this lawsuit pursuant to 42 U.S.C. §1983 as a *pro se* litigant incarcerated in Colorado State Penitentiary. Plaintiff filed his initial complaint on June 1, 2012, and an Amended Complaint as a matter of right on August 3, 2012. (Dockets ##1, 37.)

I.      **Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

Apparently due to the Plaintiff's lack of teeth, Defendant Dr. Hodge of the prison facility's medical department ordered a "mechanical soft diet" for the Plaintiff in 2011. For example, instead of meat, Plaintiff was given peanut butter and jelly or egg salad. However, the bread was crumbled up so that he could not make a sandwich. Additionally, Plaintiff was repeatedly served pizza, raw carrots, apples, celery and other vegetables he could not chew. Further, Plaintiff was served a main course submerged under liquid. Because Plaintiff perceived that he was not receiving full servings, he asked that the meal trays be corrected, but allegedly they were not. As a result, Plaintiff lost 18 pounds in a month and a half. Thereafter, Dr. Hodge ordered Plaintiff a snack to help him gain weight; however, the facility's food service department refused to follow the order and Dr. Hodge

155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

[2]The Court notes that Plaintiff's Amended Complaint contains both incomplete and run-on sentences, lacks organization and structure, and reads as if from a "stream of consciousness." Nevertheless, the Court will construe the pleading liberally as directed by the Tenth Circuit to attempt to decipher factual allegations and corresponding legal claims.

failed to enforce such order.

Also, prison staff entered Plaintiff's cell and put blood on his walls, sheets and food trays, replaced his toothbrush with a used, dirty toothbrush, poured out his shampoo and replaced it with water, and took legal documents, including letters, motions and grievances, out of his cell. Furthermore, despite prison policy allowing Plaintiff to file grievances for problems with his food trays, on May 23, 2012, Defendant Huertas wrote Plaintiff a memorandum in which he instructed Plaintiff he could not have discrepancies corrected in his food trays.  Later, Plaintiff's grievances were determined to be frivolous by Defendant Warden Trani, who refused to investigate the grievances and who issued warnings to Plaintiff on March 3, 2012 and June 12, 2012.  On July 13, 2012, Defendant Burbank issued a memorandum placing Plaintiff on a restriction from which he was permitted to file only one grievance per month.  Plaintiff alleges that on July 25, 2012 while he was in court, someone took the memorandum written by Burbank and re-wrote it.

## II.    Procedural History

Based upon these factual allegations, Plaintiff alleges essentially that Defendants deprived him of his First (access to the courts and freedom of religion), Eighth (deliberate indifference to medical needs), and Fourteenth (due process)[3] Amendment rights by refusing to correct discrepancies in meals that are served in contravention of medical orders to provide a "mechanical soft diet," and orders to provide a "religious diet."  (Docket #37 at 4-11.)  As a result of Defendants' alleged refusal to correct deficiencies, Plaintiff asserts that he has lost 18 pounds in less than 90

---

[3]The Court agrees with the Defendant that, although Plaintiff identifies the Fifth Amendment as the subject of certain claims, neither his factual allegations nor arguments support such claims and, as he is incarcerated in a state prison, his due process claims are governed by the Fourteenth Amendment.

days. (*Id.* at 4.)  Further, Plaintiff contends that certain Defendants have improperly characterized his grievances as "frivolous." (*Id.* at 5.)  Finally, Plaintiff alleges the Defendants have improperly removed legal documents from his cell and from his mailings to the Court. (*Id.* at 7-9.)  As relief, Plaintiff requests actual and punitive damages against each Defendant in various amounts. (*Id.* at 20.)  The Plaintiff makes no request for injunctive relief in the Amended Complaint.

Defendants responded to the Amended Complaint by filing the present motion arguing they are absolutely immune from liability in their official capacities and qualifiedly immune in their individual capacities, in that the Plaintiff fails to allege facts sufficient to plausibly state claims under the First, Eighth and Fourteenth Amendments against each Defendant.  Defendants further contend that Plaintiff is barred from seeking damages for mental or emotional injury without a showing of physical injury.

Plaintiff filed a "response" to the motion on November 15, 2012; however, on the same day, Plaintiff filed a "motion for clarification" asserting that he had not received a copy of the present motion and, thus, his response was made in anticipation of an argument concerning "equitable tolling." *See* docket #105.  After the Defendants filed no reply brief within the time allotted, the Court issued an order on December 10, 2012 acknowledging the confusion in the briefing and directing the Defendants to serve another copy of the motion to dismiss upon the Plaintiff.  Docket #117.  Plaintiff's response brief was to be filed on or before January 7, 2013.  *Id.*  On December 14, 2012, Defendant filed a notice of compliance with the December 10, 2012 order.  Docket #118. However, the Plaintiff filed no response within the deadline and has sought no extension of time within which to do so.  Therefore, the Court will consider the briefing as currently filed.

In Plaintiff's response, he argues that he had lost 23 pounds in less than six months after

having been denied food and medical care.  Further, Plaintiff contends that legal documents had been confiscated from his cell and that his Complaint and Amended Complaint had been altered in the amounts of monetary relief he seeks.  Plaintiff also asserts that each Defendant is a supervisor who personally participated in the alleged violations as follows: (1) Warden Trani found Plaintiffs' grievances to be frivolous; (2) Dr. Hodge refused to enforce his order that Plaintiff receive a mechanical soft diet; (3) Huertas wrote a memorandum instructing the Plaintiff that he cannot have discrepancies corrected in food trays; and (4) Burbank removed Plaintiff's ability to file grievances. Further, Plaintiff argues that the Supreme Court's opinion in *Wilson v. Seiter*, 501 U.S. 294 (1991) stands for the proposition that losing fifteen pounds in six months demonstrates deliberate difference for purposes of showing the objective component of an Eighth Amendment claim; in addition, the subjective component is demonstrated by Dr. Hodge's order for a snack to help the Plaintiff gain weight.

As set forth above, the Defendants filed no reply brief in support of the motion.

## LEGAL STANDARD

### I.   Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906,

5

909 (10th Cir. 1974) (emphasis in original).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.  Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.  Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

## II.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191 .

## III.   Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on

the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

I.      **Sovereign Immunity**

Plaintiff does not specify whether he sues Defendants in their official capacities, individual capacities, or both.  Apparently assuming the Court may construe Plaintiff's claims as against Defendants in their official capacities, Defendants argue they are absolutely immune from liability pursuant to the Eleventh Amendment of the United States Constitution.  Plaintiff neither opposes Defendants' argument nor makes any argument concerning jurisdiction.

Claims against state officials in their official capacities are essentially claims against the state entity.  *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted).  It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute

8

immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff seeks only monetary damages in his Amended Complaint. Plaintiff had filed motions for preliminary injunctive relief in this case (dockets #55 and #61), but those have been denied by Judge Arguello (docket #119). Therefore, the Court finds that Plaintiff's claims do not fall under the *Young* exception to sovereign immunity under the Eleventh Amendment. Accordingly, this Court has no jurisdiction to hear the Plaintiff's claims against Defendants in their official capacities (to the extent they are asserted here), and the Court respectfully recommends that the District Court grant the Defendants' motion to dismiss such claims.

## II.    Qualified Immunity

Defendants also assert that they are entitled to qualified immunity on the claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial

or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995); *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

10

Here, for Plaintiff's claims pursuant to 42 U.S.C. § 1983, the Court examines first whether Plaintiff has demonstrated on the alleged facts that Defendants violated his constitutional rights. If the Court finds that Plaintiff's facts state plausible violations of a right, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

Accordingly, the Court begins with an analysis of whether Plaintiff sufficiently alleges his First, Eighth and Fourteenth Amendment due process rights were violated and whether Defendants can be found individually liable for a violation under § 1983. Although not clearly stated in his Amended Complaint, the Plaintiff alleges for his Claim One that Defendant Huertas violated his First, Eighth and Fourteenth Amendment rights in depriving Plaintiff of food by issuing a memorandum to the Plaintiff on May 23, 2012 instructing him that he could not have discrepancies corrected in his food trays. For Claim Two, Plaintiff alleges Defendant Trani violated his First, Eighth and Fourteenth Amendment rights by failing to enforce policies concerning food service and finding Plaintiff's grievances to be frivolous. For Claim Three, Plaintiff alleges Defendant Burbank violated his First, Eighth and Fourteenth Amendment rights by issuing and backdating a memorandum placing Plaintiff on a restriction of filing one grievance per month. For Claim Four, Plaintiff alleges Defendant Hodge ordered a mechanical soft diet for the Plaintiff, but Food Service refused to follow the order and Dr. Hodge failed or refused to enforce his order. Further, Plaintiff alleges Dr. Hodge ordered a snack for the Plaintiff to help him gain weight; however, the order was not followed and Dr. Hodge failed or refused to enforce the order.

To establish a violation, the Plaintiff must sufficiently allege that (1) Defendants personally participated in the challenged actions, and (2) they violated Plaintiff's right to freedom of religion

or were deliberately indifferent to a substantial risk of serious harm arising from their actions.

A.   Personal Participation

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010).

Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). Thus, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302 (quotation and brackets omitted). In other words, the Section 1983 liability is properly imposed "upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights." *Dodds*, 614 F.3d at 1201. While the Plaintiff attributes his alleged deprivation of food and denial of access to the courts to the named Defendants in the Amended Complaint, he does not attribute the alleged confiscation of legal materials to any Defendant in this case.

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Plaintiff must show

12

that each Defendant caused the deprivation of a federal right.  *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985).  Here, the Plaintiff fails to state any facts demonstrating that any of the named Defendants allegedly confiscated his legal materials; therefore, the Court recommends that any claims based upon the alleged confiscation of materials be dismissed.

Furthermore, Defendants argue that Plaintiff's claims against Trani fail for lack of personal participation.  Plaintiff asserts that all Defendants are supervisors; however, he specifically claims that Trani failed to enforce policies concerning food service and determined Plaintiff's grievances to be frivolous.  The Court agrees that Plaintiff fails to state facts demonstrating an affirmative link between Plaintiff's alleged deprivation of food and Warden Trani's personal participation in such deprivation (that is, Plaintiff does not allege Warden Trani himself served Plaintiff food he could not chew) or the warden's failure to supervise (there are no allegations that Warden Trani has or had any supervisory authority over food service workers, or that the workers served food Plaintiff could not chew at the direction of Warden Trani).

Therefore, the Court recommends finding that Plaintiff has failed to demonstrate personal participation by Warden Trani in any failure to enforce food service policies.  However, Plaintiff alleges that Warden Trani issued two written warnings finding Plaintiff's grievances to be frivolous.  Taking the allegations as true, and to the extent such allegation states a constitutional violation, the Court recommends finding that Plaintiff has demonstrated Warden Trani's personal participation in such conduct.

     B.    <u>First Amendment</u>

Plaintiff's allegations, although unclear, may be construed to state interference with his rights to both freedom of religion (in the deprivation of food he cannot chew) and access to the courts (in

the determinations of Plaintiff's grievances to be frivolous and concomitant restriction on the number of grievances Plaintiff would be permitted to file).   Therefore, the Court will analyze each potential claim to determine whether they plausibly state claims for relief.

                    1.     *Freedom of Religion*

      "[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry." *Kay v. Bemis*, 500 F.3d 1214, 1218 (2007). "First, the prisoner-plaintiff must first [sic] show that a prison regulation 'substantially burdened ... sincerely-held religious beliefs.'" *Kay,* 500 F.3d at 1218 (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). "Consequently, '[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held.'" *Kay,* 500 F.3d at 1218 (quoting *Snyder v. Murray City Corp.,* 124 F.3d 1349, 1352 (10th Cir. 1997), *vacated in part on other grounds*, 159 F.3d 1227 (10th Cir. 1998)). "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.'" *Kay,* 500 F.3d at 1218 (quoting *Boles,* 486 F.3d at 1182). "The burden then returns to the prisoner to 'show that these articulated concerns were irrational.'" *Kay,* 500 F.3d at 1219 n. 2 (quoting *Salahuddin v. Goord,* 467 F.3d 263, 275 (2d Cir. 2006)).

> "At that point, courts balance the factors set forth in *Turner v. Safley,* 482 U.S. 78, 89-91, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), to determine the reasonableness of the regulation: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Kay,* 500 F.3d at 1219 (citation omitted).

Plaintiff alleges that he was served a religious diet by Food Services.  With regard to this diet, Plaintiff alleges claims against Defendants Huertas and Hodge for violations of the First Amendment.  However, Plaintiff's allegations fail to state, in any way, how being served food he cannot chew through the facility's failure to follow Dr. Hodge's order interferes with his religion.  In other words, there are no allegations demonstrating that prison conduct "substantially burdened [Plaintiff's] sincerely-held religious beliefs" or even that Plaintiff's religious beliefs are sincerely held.

Accordingly, the Court recommends that the District Court grant Defendants' motion to dismiss Plaintiff's First Amendment claims for interference with his freedom of religion, as set forth in Plaintiff's Claim One against Huertas and Claim Four against Hodge.

### 2.    *Access to Courts*

Plaintiff alleges that Defendant Trani twice issued warnings finding Plaintiff's grievances to be frivolous and, based upon such findings, Defendant Burbank placed a restriction on the Plaintiff permitting him to file only one grievance per month.

An inmate asserting a denial-of-access claim "must demonstrate actual injury from interference with his access to the courts ...." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010).  The Tenth Circuit recently distinguished an inmate's ability to utilize state administrative grievance procedures from an inmate's right to access the courts, noting that "there is no constitutional right to state administrative grievance procedures."  *See Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. Oct. 3, 2011) (unpublished).  Although a prison official's obstruction of the grievance process may excuse an inmate's non-compliance with the PLRA, it does not create a cause of action under the Constitution.  *See id.* at n.2.

Plaintiff asserts that the Defendants' conduct inhibited Plaintiff from filing grievances concerning his food trays; however, Plaintiff does not allege any direct interference with his access to the courts. Moreover, there is no indication that Plaintiff's inability to file grievances has had any impact on his ability to bring claims in this Court; that is, there are no allegations nor argument that the Plaintiff has failed to exhaust his administrative remedies.

Because Plaintiff's assertion of interference is limited to the prison's grievance process, and because there is no indication of any impact on the Plaintiff to file claims in court, the Court finds that Plaintiff has failed to demonstrate any constitutionally cognizable injury resulting from the alleged denial of legal access. Thus, the Court recommends the District Court grant Defendants' motion to dismiss Plaintiff's First Amendment claims as set forth in Claim Two against Trani and Claim Three against Burbank.

C.     Eighth Amendment

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health."

16

*Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (quoting *Oxendine v. Kaplan*, 241

F.3d 1272, 1276 (10th Cir. 2001)).  Substantial harm includes "lifelong handicap, permanent loss, or considerable pain."  *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Plaintiff alleges that his "mechanical soft" diet was medically prescribed by Defendant Hodge in 2011 and that, with respect to his claimed injury – weight loss – Dr. Hodge prescribed a snack to help him gain weight.  Without more, the Court would conclude that Plaintiff's weight loss does not rise to the level of a substantially serious medical need protected by the Eighth Amendment.  Plaintiff's assertion that the Supreme Court's opinion in *Wilson v. Seiter*, 501 U.S. 294 (1991) stands for the proposition that losing fifteen pounds in six months demonstrates deliberate difference is simply incorrect; the Supreme Court makes no such determination in *Wilson*.  However, it may be possible that, considering Dr. Hodge's prescription of a snack to correct the weight loss, taken as true, Plaintiff's weight loss could be construed as a harm "that has been diagnosed by a physician as mandating treatment."  However, while the Plaintiff may be able to demonstrate the objective component of an Eighth Amendment claim, Plaintiff fails to allege facts demonstrating the subjective component that Defendants consciously disregarded a substantial risk of harm.

First, there is no indication from the allegations that Defendant Huertas knew the Plaintiff had lost weight at the time he issued his memorandum instructing the Plaintiff that he could not correct the discrepancies in his meal trays.  As such, the Plaintiff fails to demonstrate Huertas knew he faced a substantial risk of harm and disregarded that risk.

Second, the allegations demonstrate that Dr. Hodge did know about Plaintiff's weight loss and actually took reasonable measures to abate it by ordering a special snack for the Plaintiff.  Such conduct does not demonstrate cruel or unusual punishment.  Further, Plaintiff alleges Dr. Hodge failed to enforce his order concerning the mechanical soft diet; however, Plaintiff fails to state any

facts demonstrating an affirmative link between the service of food Plaintiff cannot chew by food services workers and Dr. Hodge's personal participation in such service (that is, Plaintiff does not allege Dr. Hodge himself served Plaintiff food he could not eat) or Dr. Hodge's failure to supervise (there are no allegations that Dr. Hodge has or had any supervisory authority over food service workers, or that the workers served food Plaintiff could not chew at the direction of Dr. Hodge). Therefore, Plaintiff fails to allege Dr. Hodge's personal participation in any failure to enforce orders concerning Plaintiff's alleged deprivation of food by the facility's food service department.

Finally, Plaintiff alleges Eighth Amendment claims against Defendants Trani and Burbank, but fails to allege any facts demonstrating that Warden Trani or Legal Officer Burbank knew about and disregarded a substantial risk that Plaintiff lost, or would lose, weight by their conduct.

Accordingly, the Court recommends that the District Court grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claims as stated in Claims One through Four.

D.   Fourteenth Amendment

As with the majority of his claims, the Plaintiff does not specify how his Fourteenth Amendment rights were violated; that is, the Plaintiff does not identify whether he alleges violations of his due process or equal protection rights. However, construing Plaintiff's Amended Complaint liberally, the Court finds that Plaintiff may be alleging that, by the service of food he cannot chew, or by the restriction of the number of grievances he can file, Defendants have deprived him of life or liberty without due process of law.

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV). "A due process claim under

the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).  The Tenth Circuit has ruled that property interest and liberty interest claims by prisoners are "to be reviewed under *Sandin*'s atypical-and-significant-deprivation analysis." *Steffey,* 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (other citations omitted)).  "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin v. Conner*, 515 U.S. 472, 486 (1995)).

"[T]he touchstone of the inquiry ... is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination ... ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir.1997) (citing *Sandin*, 515 U.S. at 485-87).

A state's voluntary provision of an administrative grievance process does not create a liberty interest in that process.  *Boyd*, 443 F. App'x at 332 (citing cases).  Therefore, the Plaintiff fails to state a Fourteenth Amendment due process claim with respect to any restrictions on his ability to file grievances.

The Plaintiff cites no case law supporting the existence or validity of a life or liberty interest in receiving a mechanical soft diet, and the Court could find none.  More importantly, however, the

20

Plaintiff fails to allege, in any way, how the service of certain foods he cannot chew imposes an "atypical and significant hardship," in relation to the ordinary incidents of prison life, for which a liberty interest would be created.  The Plaintiff does not allege that all food he is served at every meal is impossible to eat.  As such, the Court recommends that the District Court find the Plaintiff has failed to state a liberty interest sufficient to support a due process claim against any of the Defendants.

Accordingly, the Court recommends that the District Court grant the Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claims as set forth in Claims One through Four.

## III.   Damages

Although Plaintiff seeks only "actual" and "punitive" damages from the Defendants in his Request for Relief, Plaintiff refers to mental and emotional distress he has suffered as a result of Defendants' alleged actions in the content of his Amended Complaint.  Therefore, to the extent Plaintiff's allegations may be construed as claims seeking damages for pain and suffering, Defendants argue that such claims should be dismissed.

"While claims for mental and emotional distress are cognizable under § 1983, under [42 U.S.C.] § 1997e(e) 'such a suit [by a prisoner] cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" *Lawson v. Engleman*, 67 F. App'x 524, 526-27 (10th Cir. 2003) ((quoting *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999)); *see also Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins*, 165 F.3d at 807).  "[A] prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (citations omitted).

21

Here, Plaintiff alleges he has suffered weight loss as a result of being served certain foods he cannot chew; however, weight loss, in itself, has been deemed to be insufficient to demonstrate physical injury under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) ("PLRA").  *See Gibson v. Zavares*, No. 09-cv-02328-WYD, 2010 WL 3790894, at *3 (D. Colo. Sept. 22, 2010) ("numerous courts have held that weight loss is insufficient to support any award for emotional distress under 42 U.S.C. § 1997e(e).") (quoting *Raheem v. Miller,* No. CIV-09-80-C, 2010 WL 2595112, at *15 (W.D. Okla. May 14, 2010)) (unpublished); *see also Agrawal v. Briley*, 02-cv-06807, 2006 WL 3523750, at *14 (N.D. Ill. Dec.6, 2006) (noting that " 'pain of hunger,' standing alone, [likely fails to] overcome[ ] the PLRA's bar to recovering compensatory damages for non-physical injury.") (unpublished).

The Court notes that the PLRA does not bar punitive damages.  *Searles v. Van Bebber*, 251 F.3d 869, 880-81 (10th Cir. 2001) ("as a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury").  Therefore, to the extent the District Court allows all or a portion of Plaintiff's claims to proceed, the Court recommends that the District Court grant Defendants' motion to dismiss Plaintiff's claims for compensatory damages, if any, but allow the claims for punitive damages to proceed at this stage.

## CONCLUSION

In sum, the Court finds that Plaintiff has failed to state claims pursuant to the First, Eighth and Fourteenth Amendments against the Defendants in this case.  Further, pursuant to the PLRA, the Plaintiff may not assert claims for compensatory damages absent a showing of a physical injury.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that the Defendant's Motion to Dismiss Plaintiff's Complaint [filed October 22,

2012; docket #95] be **GRANTED**.

Entered and dated at Denver, Colorado, this 17th day of January, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge